UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WAGNER,

                Plaintiff,

v.

INTER-CON SECURITY SYSTEMS, INC.,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/29/2017

No. 15-cv-9858 (TPG)

**OPINION**

In this employment discrimination action, the parties have filed cross-motions for summary judgment and partial summary judgment on plaintiff's claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 (2012), and under the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8–107(1)(a). Because the evidence in this case presents genuine issues of material fact, summary judgment is precluded. Accordingly, the court denies defendant's motion for summary judgment and denies plaintiff's motion for partial summary judgment.

**BACKGROUND**

Defendant Inter-Con Security Systems, Inc. ("Inter-Con"), is a global provider of physical security services for both public and private entities. ECF No. 45, at 1. In November 2013, Inter-Con began providing security services to the United States Marshall Service ("USMS") for the Second Judicial Circuit. ECF No. 43, at 1; ECF No. 45, at 1. Inter-Con employs Court Security Officers ("CSO")

1

who are responsible for ensuring that the courthouse remain a safe environment for the judiciary, attorneys, court personnel, and the general public. ECF No. 43, at 1; ECF No. 45, at 1.

## I. CSO Annual Medical Examinations

Because "[t]he medical condition of the CSO workforce is critical to the overall safety of the judiciary," the contract between Inter-Con and USMS requires that Inter-Con's CSOs meet medical standards and physical requirements set by USMS. ECF No. 45, at 2. This makes necessary, among other things, vision and hearing examinations, and testing of the cardiovascular, respiratory, gastrointestinal, nervous, and endocrine systems. ECF No. 45, at 2. One of Inter-Con's responsibilities is to ensure that each CSO undergo an annual medical review, which starts with an initial examination by Inter-Con physicians. ECF No. 43, at 1; ECF No. 45, at 3.

The Inter-Con physician completes a packet called Form 229, which includes a physical exam, an EKG, lab work, and vision and hearing tests, and then sends Form 229 to Inter-Con. ECF No. 43, at 1. Inter-Con then transmits the results to USMS, who, in turn, submits them to Federal Occupational Health ("FOH"), an agency within the Department of Health and Human Services, for review by their physicians. ECF No. 43, at 2; ECF No. 45, at 3. Upon review, FOH issues a decision as to whether the CSO is medically qualified for duty or, alternatively, defers this decision pending the submission of additional documentation or testing. ECF No. 43, at 2; ECF No. 45, at 3.

To request such additional information, FOH sends USMS a Medical Review Form ("MRF"). ECF No. 45, at 3. USMS then sends the MRF to Inter-Con, for transmission back to the CSO. ECF No. 43, at 2. USMS permits CSOs sixty days to collect the requested material. ECF. No 43, at 2. When the CSO has done so, the CSO furnishes Inter-Con with the relevant documentation, Inter-Con sends it back to USMS, and USMS sends it back to FOH. ECF No. 43, at 2. Ultimately, FOH renders its decision based on its review of the initial examination and any additional requested material. ECF No. 43, at 2.

## II. Plaintiff's Employment as a CSO

Plaintiff Robert Wagner was hired as a CSO in September 2013. ECF No. 43, at 2. The essential functions required by his position included: (1) working extended hours; (2) working alone while armed; (3) working under stress; (4) stopping, questioning, or detaining individuals; (5) having the ability to physical subdue attackers; and (6) having the ability to respond to an emergency with unplanned strenuous physical activity. ECF No. 45, at 5.

Plaintiff underwent the Form 229 medical examination in April 2013, which was conducted pursuant to USMS's predecessor contract with Akal Security Services. ECF No. 43, at 3; ECF No. 45, at 5. The exam identified no disqualifying medical issues. ECF No. 43, at 3. These results were then sent to USMS and transmitted to FOH for review. ECF No. 45, at 5. While the parties disagree as to who from FOH made the subsequent request for additional information, it is undisputed that in July 2013, an FOH physician sought

additional documentation related to plaintiff's diabetic condition.[1] ECF No. 43, at 3; ECF No. 45, at 5. Defendants do not dispute plaintiff's contention that in making this request, the FOH physician stated, based on a blood sugar reading of 231, that plaintiff's diabetes was "not well controlled" and that he was at risk for sudden incapacitation. ECF No. 43, at 3. The physician included a request for additional lab tests and the disclosure of plaintiff's prescribed medications, hypoglycemic episodes, and any other complications related to plaintiff's diabetic condition. ECF No. 43, at 4.

The parties agree that following this request, plaintiff provided and FOH received additional documentation, but disagree as to the adequacy of that submission. ECF No. 43, at 43-45; ECF No. 45, at 6. Plaintiff contends that he fully complied with the request and heard nothing for six months after he submitted the supplemental documentation. ECF No. 43, at 4; ECF No. 52, at 3. Defendants contend that plaintiff did not fully respond to the request, as evidenced by the fact that FOH issued another MRF in November 2013. ECF No. 45, at 6. Defendants do not dispute, however, that while Inter-Con received the MRF in early December, it did not make plaintiff aware of the FOH request until February 14, 2014—"one day before the supplemental information was due back to USMS." ECF No. 43, at 5. Plaintiff submitted additional material to Inter-Con on February 18, 2014. ECF No. 43, at 5; ECF No. 45, at 6.

---

[1] Plaintiff appears to disagree with defendant's identification of the requesting physician as FOH Judicial Security Division Reviewing Medical Officer Dr. Goldhagen. Plaintiffs agree that an FOH physician requested more information from plaintiff, though they do not identify this physician. ECF No. 43, at 3. The identification of the requesting doctor is not material to the issues in this case.

Two months later, on April 23, 2014, Inter-Con received an email from USMS Occupational Health Nurse, Barbara Hayes, stating that plaintiff was to be "removed from performing CSO duties until the requested supplemental medical information is received, reviewed and it is determined that he meets the CSO medical standards." ECF No. 45, at 7. More specifically, FOH stated that plaintiff was to be removed from duty "due to insufficient information about the stability and control of the diabetic condition." ECF No. 43, at 5. The email also stated:

> According to FOH this is the 3rd request for this information (prior requests were made on 7/9/13 and 11/28/13). Failure to submit the information in its entirety within 60 days of this notification may result in disqualification by the Contractor or by the US Marshals Service for contract non-compliance (Sections C.9.3.6 and C.9.3.7). This information is due no later than 6/28/14.

ECF No. 45, at 7.[2] As a result of this exchange, Inter-Con certified plaintiff for a medical leave of absence under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, based on a "serious health condition." ECF No. 43, at 6; ECF No. 45, at 7.

During plaintiff's unpaid leave of absence, he submitted to Inter-Con additional medical documentation in connection with the list of requested materials the FOH issued in late April. ECF No. 43, at 7; ECF No. 45, at 8. It is undisputed that Inter-Con received this submission, but the parties disagree as to how Inter-Con handled plaintiff's files. ECF No. 43, at 7. Plaintiff contends

---

[2] While plaintiff denies defendant's contention that this email was the result of *plaintiff's* failure to comply with the previous medical information requests, plaintiff does not appear to deny the fact of this email or its content.

5

that Inter-Con did not ensure all of the medical documentation that plaintiff provided went to USMS, including the results of a stress test. ECF No. 43, at 7; ECF No. 52, at 4. Defendants contend that all documentation received from plaintiff was indeed forwarded to USMS, and that any omissions were not the result of Inter-Con's actions, but of plaintiff's. ECF No. 50, at 6.

An FOH physician reviewed plaintiff's supplemental documentation in the summer of 2014 and determined that plaintiff's file still did not contain all of the requested items. ECF No. 43, at 7; ECF No. 45, at 8. Accordingly, FOH Judicial Security Division Reviewing Medical Officer Dr. Miller once again deferred making a medical determination, pending review of the requested supplemental material regarding plaintiff's diabetic condition. ECF No. 43, at 7; ECF No. 45, at 8.

On July 22, 2014, as a result of FOH's continued deferrals, USMS informed Inter-Con that plaintiff had been disqualified from performing on the contract. ECF No. 45, at 8. Six weeks later, in early September, Inter-Con informed plaintiff that his employment with Inter-Con had been terminated. ECF No. 43, at 8; ECF No. 45, at 9. During these six weeks, plaintiff, unaware that he had been disqualified, continued to collect the requested medical documentation, including another copy of the stress test results and a thirty day blood glucose log. ECF No. 43, at 8. Plaintiff delivered these materials to his employer's New York office in September 2014. ECF No. 43, at 8. While plaintiff contends that none of the September 2014 documents were transmitted to USMS, defendant denies this allegation. ECF No. 43, at 8; ECF No. 50, at 7.

## LEGAL STANDARD

I. **Standard of Review for Summary Judgment**

Summary judgment should be granted "if it can be established 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Sheppard v. Beerman*, 317 F.3d 351, 354-55 (2d Cir. 2003) (quoting Fed. R. Civ. P. 56(c)). A fact is "material" if it might impact the outcome of the case. *Giordano v. City of New York*, 274 F.3d 740 (2d Cir. 2001). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden is on the moving party to show no genuine issue of material fact exists. *Kirby v. Yonkers School Dist.*, 767 F. Supp. 2d 452, 459 (S.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party does so, "the non-moving party, through evidence, must demonstrate the existence of a material factual dispute to defeat summary judgment." *Id.* (citing *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999)). The court draws all inferences in the light most favorable to the non-moving party. *See Giordano*, 274 F.3d at 746.

When assessing cross-motions for summary judgment, the court must examine each party's motion "on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115,

121 (2d Cir. 2001)). Even when both parties assert that no genuine issues of material fact exist, the court "cannot enter judgment for either party without satisfying itself that no such issues of material fact exist." *S.E.C. v. Lyon*, 605 F. Supp. 2d 531, 540 (S.D.N.Y. 2009).

## II. Wrongful Termination Under the ADA

The ADA prohibits discrimination against any "qualified individual with a disability because of the disability of such individual in regard to, *inter alia*, discharge of employees." *See Giordano*, 274 F.3d at 747 (quoting 42 U.S.C. § 12112(a)). Disability discrimination claims brought under the ADA are subject to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248 (S.D.N.Y. 2009); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

To make out a prima facie case for discrimination under the ADA, a plaintiff must establish that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability." *Falso v. SPG Direct*, 353 Fed. Appx. 662, 663 (2d Cir. 2009). The *prima facie* case does not impose a demanding burden on plaintiffs, and, once met, "creates a presumption that the employer discriminated against the [plaintiff] in an unlawful manner." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237

(S.D.N.Y. 2015) (alteration in original) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998)).

To rebut this presumption, "'the defendant must produce evidence' supporting a 'clear and specific' explanation for the termination, and which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Id.* (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000)). Once defendant articulates a legitimate, non-discriminatory reason for the action, the plaintiff must then put forth evidence sufficient "to support a rational finding that the . . . reasons proffered by the employer were false, and that more likely than not the employee's [disability] was the real reason for the discharge." *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 139 (2d Cir. 1996). Ultimately, while "[t]he plaintiff retains the ultimate burden of persuasion," summary judgment is appropriate only if the court finds the employer's proffered reason "forecloses any issue of material fact." *Kinsella v. Rumsfeld*, 320 F.3d 309 (2d Cir. 2003) (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000)).

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

A. <u>Subject Matter Jurisdiction</u>

At the outset, the court rejects defendant's argument that the court lacks subject matter jurisdiction over plaintiff's ADA claim because plaintiff failed to file a new charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of his termination. ECF No. 36, at 10.

The court finds plaintiff's discrimination claim is "reasonably related" to the EEOC charge. *See Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993).

The Second Circuit has identified three situations in which a court has subject matter jurisdiction over a "reasonably related" claim not specifically alleged in the initial EEOC charge: (1) "where the conduct complained of would fall within the 'scope of the EEOC investigation,' " (2) for a claim "alleging retaliation by an employer against an employee for filing an EEOC charge," and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402-03; *see also Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013). Plaintiff's EEOC charge for his suspension implicates the first and third categories of reasonable relatedness with respect to his claim for discrimination.

First, because the conduct complained of in plaintiff's instant claim is identical to the conduct complained of in his EEOC charge—namely, the requests for additional medical documentation, *see* ECF No. 1, at 2—the basis for this complaint would undoubtedly have come within the purview of the EEOC investigation. Indeed, the only events that occurred between plaintiff's suspension and termination was another FOH deferral and an official disqualification by USMS.[3] ECF No. 45, at 8. The bulk of the conduct that forms

---

[3] The court acknowledges that defendants take issue with plaintiff's characterization of the certification for a leave of absence pursuant to the FMLA as a "suspension." ECF No. 49, at 7. The court adopts the term in light of plaintiff's EEOC charge for suspension in connection with that leave of absence.

10

the basis of plaintiff's complaint was thus complete by the time he filed his charge with the EEOC. Plaintiff's allegations also satisfy the third category of reasonable relatedness insofar as his termination constitutes a further incident carried out in precisely the same manner as his suspension. By Inter-Con's own admission, the suspension and termination were the result of precisely the same issue—plaintiff's failure to submit additional medical documentation related to his diabetic condition. ECF No. 45, at 8.

B. *Prima Facie* Case

As defendant does not contest that it is subject to the ADA and does not dispute that plaintiff was disabled within the meaning of the ADA, the court moves to the two contested elements of the prima facie case—(1) whether plaintiff was qualified to perform the essential functions of his job, with or without reasonable accommodation and (2) whether plaintiff suffered an adverse employment action *because of* his disability. For purposes of defendant Inter-Con's motion for summary judgment, the court draws all reasonable inferences in the light most favorable to plaintiff Wagner. *See Lumbermens*, 628 F.3d at 51. The court finds that the evidence presented by the parties creates genuine issues of material fact precluding summary judgment in favor of defendant.

1. Whether Plaintiff Was Otherwise Qualified

Defendants argue that because "FOH was tasked with determining whether an employee was qualified to perform the essential functions of the CSO position," and plaintiff "failed to provide adequate documentation that would show that he could perform [those] functions," the record could not possibly

11

establish that plaintiff was otherwise qualified to perform the essential functions of his job. ECF No. 36, at 13. Indeed, defendants contend that it was precisely USMS's inability to make this determination—due to insufficient information—that led to plaintiff's termination. ECF No. 36, at 13. However, defendants have failed to establish that there is no genuine dispute of material fact as to plaintiff's qualification to be a CSO.

When determining the essential functions of a given job, courts engage in a fact-specific inquiry of both the employer's own description of the position and "how the job is actually performed in practice." *Goonan v. Fed. Reserve Bd. of N.Y.*, 916 F. Supp. 2d 470, 479 (S.D.N.Y. 2013) (citation omitted) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d Cir. 1995)). As described above, essential and undisputed functions of the CSO position are to (1) work extended hours; (2) work alone while armed; (3) work under stress; (4) be physically able to stop, question, or detain individuals; (5) be physically able to subdue attackers; and (6) be physically able to respond to an emergency with unplanned strenuous physical activity. ECF No. 45, at 5.

In practice, however, the record shows that Inter-Con never contested plaintiff's good performance as a CSO. ECF No. 51, at 11; ECF No. 52, at 2. Indeed, plaintiff performed his CSO duties without incident for months at a time before and between FOH requests for supplemental medical information. ECF No. 43, at 4-5; ECF No. 52, at 3. Likewise, defendants agree that it knows of no complaints about plaintiff's performance "from any supervisor, co-worker or any member of the judiciary." ECF No. 43, at 3. While defendants argue that they

have "no evidence that would show whether [plaintiff] was capable, or incapable, of performing the essential functions of his position," the court finds the fact that plaintiff was performing his job to the apparent satisfaction of his employer as creating a triable issue of fact on this matter. ECF No. 50, at 3.

While defendants focus on the fact that FOH, not Inter-Con, was the body tasked with making the ultimate "essential functions" determination, the court is skeptical of an argument that suggests an employer, via contract, can delegate this determination in its entirety. *See, e.g., Keinepp v. MVM, Inc.*, No. 15-cv-565-JED, 2017 WL 3197732 (N.D. Okla. July 27, 2017) ("The ADAAA does not permit [employers] to utilize such a contract as a shield for any disability discrimination."). Moreover, the fact that Inter-Con is tasked with performing the initial CSO medical examinations shows defendant plays more than a negligible role in the overall process. ECF No. 43, at 1.

2. Whether the Adverse Action Was Because of Plaintiff's Disability

Defendant asserts that its decision to terminate plaintiff's employment was "due to one issue: his failure to provide FOH with all of their requested supplemental documentation." ECF No. 36, at 13. Defendant supports its position by noting that plaintiff's disability was not mentioned "as the reason for the decisions related to [plaintiff]." ECF No. 36, at 13. However, because "employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law," it is well-established that "employment discrimination plaintiffs are entitled to rely on circumstantial

13

evidence." *Holcomb v. Iona College*, 521 F.3d 130, 141 (quoting *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-65 (2d Cir. 1989)).

And while Inter-Con may not have stated explicitly that plaintiff's diabetic condition was the reason for his termination, Inter-Con referred to plaintiff's condition multiple times in the context of communicating its decisions related to plaintiff's employment. For example, in April 2014, Inter-Con informed plaintiff: "[Y]ou were removed from performing CSO duties due to insufficient information regarding the stability and control of your diabetic condition." ECF No. 51, at 11. And again in the September 2014 letter informing plaintiff that his employment had been officially terminated, Inter-Con referred to plaintiff's condition, citing "insufficient information regarding the stability and control of the diabetic condition." ECF No. 51, at 11. Thus, while defendant claims that the employee who communicated the termination decision was not even aware that plaintiff had diabetes at the time, viewing the record in the light most favorable to plaintiff, the record indicates that Inter-Con was very much aware of plaintiff's condition. ECF No. 49, at 6.

C. <u>Legitimate, Non-discriminatory Purpose</u>

Inter-Con proffers two reasons for its decisions regarding plaintiff's employment: (1) USMS's order that plaintiff be removed and subsequently disqualified; and (2) plaintiff's failure to meet USMS's request. Here, as above, to the extent defendant argues the possibility of its own liability is foreclosed because plaintiff's termination was in the hands of a third party, the court is unpersuaded. At the very least, the question presents a triable issue.

14

Plaintiff does not dispute that "once USMS orders Inter-Con to remove or disqualify an employee, the Company has no discretion as to how to handle the employee [and] must follow USMS's order." ECF No. 36, at 14. Plaintiff takes issue, however, with Inter-Con's attempt to use this arrangement to "insulate itself" from liability. ECF No. 51, at 12. The court agrees. Taking Inter-Con's argument to its logical conclusion would lead to the unacceptable result that an employer could bind itself to carrying out terminations based on the directives of its partner in contract, regardless of whether those directives were discriminatory and thus illegal. This outcome is at odds with the ADA's prohibition against not only an employer's direct discrimination, but also for an employer's participation in a contractual agreement "that has the effect of subjecting a covered entity's qualified . . . employee with a disability to the discrimination prohibited by [the ADA]." 42 U.S.C. § 12112(b)(2). Or, "[i]n other words, an employer may not achieve through a contractual relationship what it is prohibited from doing directly." *Fromm v. MVM, Inc.*, 371 Fed. Appx. 263, 270-71 (3d Cir. 2010). Thus, Inter-Con's first argument fails to articulate a legitimate, nondiscriminatory reason.

Inter-Con's second and related reason is that plaintiff violated defendant's policy "[b]y failing to turn in all requested documentation" to FOH. ECF No. 36, at 15 (emphasis omitted). However, the record makes clear that the parties genuinely disagree about whether plaintiff failed to submit or defendant failed to transmit his documentation. *Compare* ECF No. 43, at 7, *with* ECF No. 50, at 6. Construing the evidence in the light most favorable to the plaintiff, the court

assumes that plaintiff did in fact submit all of the requested documentation. ECF No. 52, at 4. Thus, assuming plaintiff's failure to comply with this requirement would constitute a legitimate, non-discriminatory basis for his termination, the genuine dispute as to whether this actually occurred prevents the entry of summary judgment in defendant's favor.

D. New York City Human Rights Law Claim

Defendants also move for summary judgment on plaintiff's claim under the NYCHRL. Like claims under the ADA, NYCHRL claims "are evaluated using the *McDonnell Douglas* framework." *Anyan v. New York Life Ins. Co.*, 192 F. Supp. 2d 228, 246 (S.D.N.Y. 2002). Unlike its federal counterpart, however, the NYCHRL "must be construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Singh v. Covenant Aviation Sec., LLC*, 16 N.Y.S. 3d 611, 615 (N.Y. App. Div. 2d Dep't 2015) (quoting *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011)). Thus, as the record precludes entry of summary judgment in favor of Inter-Con under the ADA, it likewise precludes entry of summary judgment under the NYCHRL. Accordingly, for the reasons stated above, defendant's motion is denied.

**II. Plaintiff's Motion for Partial Summary Judgment**

A. ADA Claim

Inter-Con does not dispute that it is subject to the ADA. It also does not dispute that plaintiff, as a diabetic, is "disabled" within the meaning of the ADA. Thus, the court considers the two remaining elements of the *prima facie* case, drawing, for purposes of plaintiff's motion, all reasonable inferences in favor of

defendant Inter-Con. The court determines that summary judgment is precluded by the evidence, which presents a genuine issue of fact as to whether Inter-Con had a legitimate, non-discriminatory purpose for terminating plaintiff's employment—specifically, plaintiff's failure to submit required documentation. ECF No. 49, at 7.

Assuming, *arguendo*, that plaintiff could make out a *prima facie* case for discrimination as a matter of law, summary judgment is still inappropriate because the parties genuinely disagree about whether plaintiff submitted certain required medical documentation. In its supporting papers, plaintiff incorrectly states that Inter-Con's only articulated reason for terminating Wagner's employment "is that the government told them to do it." ECF No. 39, at 18. On the contrary, defendant notes a second, albeit related reason for plaintiff's termination in its opposition papers—namely, that plaintiff's failure to provide the requested documentation was in contravention of Inter-Con's own policy, which plaintiff had signed and acknowledged. ECF No. 49, at 7.

Viewing the record in the light most favorable to Inter-Con, the court accepts as true its contention that it submitted to USMS all documentation it received from plaintiff. ECF No. 49, at 10; ECF No. 50, at 6. Thus, FOH's continued deferrals and MRF issuances suggest that certain requested material may have indeed been omitted by plaintiff. As these omissions would constitute a violation of Inter-Con's work rules, plaintiff's failure in this regard might constitute a legitimate and nondiscriminatory basis for his ultimate termination. ECF No. 49, at 7. At the least, the question of whether plaintiff omitted the

defendant Inter-Con. The court determines that summary judgment is precluded by the evidence, which presents a genuine issue of fact as to whether Inter-Con had a legitimate, non-discriminatory purpose for terminating plaintiff's employment—specifically, plaintiff's failure to submit required documentation. ECF No. 49, at 7.

Assuming, *arguendo*, that plaintiff could make out a *prima facie* case for discrimination as a matter of law, summary judgment is still inappropriate because the parties genuinely disagree about whether plaintiff submitted certain required medical documentation. In its supporting papers, plaintiff incorrectly states that Inter-Con's only articulated reason for terminating Wagner's employment "is that the government told them to do it." ECF No. 39, at 18. On the contrary, defendant notes a second, albeit related reason for plaintiff's termination in its opposition papers—namely, that plaintiff's failure to provide the requested documentation was in contravention of Inter-Con's own policy, which plaintiff had signed and acknowledged. ECF No. 49, at 7.

Viewing the record in the light most favorable to Inter-Con, the court accepts as true its contention that it submitted to USMS all documentation it received from plaintiff. ECF No. 49, at 10; ECF No. 50, at 6. Thus, FOH's continued deferrals and MRF issuances suggest that certain requested material may have indeed been omitted by plaintiff. As these omissions would constitute a violation of Inter-Con's work rules, plaintiff's failure in this regard might constitute a legitimate and nondiscriminatory basis for his ultimate termination. ECF No. 49, at 7. At the least, the question of whether plaintiff omitted the

requested documentation or Inter-Con failed to transmit the relevant files raises a triable issue that precludes the entry of summary judgment.

The court acknowledges plaintiff's argument that the requests for supplemental medical documentation and examinations were in themselves "unlawful demands . . . based on a single blood sugar reading." ECF No. 39, at 17. However, Inter-Con asserts a business necessity for the medical examination process that rebuts plaintiff's allegations. ECF No. 49, at 13. As defendant notes, "[i]f at any time, a CSO is unable to respond to an emergency, Inter-Con has failed not only the USMS but all employees of the Second Judicial Circuit because their safety would be put at risk." ECF No. 49, at 13. Thus, a request for the results of an examination such as a stress test fits comfortably within defendant's asserted business necessity.

B. New York City Human Rights Law Claim

Plaintiff also moves for partial summary judgment on his claim under NYCHRL. Like ADA claims, claims under the NYCHRL "are evaluated using the *McDonnell Douglas* framework." *Anyan v. New York Life Ins. Co.*, 192 F. Supp. 2d 228, 246 (S.D.N.Y. 2002). The NYCHRL requires analysis "targeted to understanding and fulfilling what the statute characterizes as [its] uniquely broad and remedial purposes, which go beyond those of counterpart state or federal civil rights laws." *Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 378 (S.D.N.Y. 2014) (citation omitted) (quoting *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S. 2d 112, 116 (N.Y. App. Div. 1st Dep't 2011). But while the standard under

the NYCHRL is liberal, it is not boundless. *See LeBlanc v. United Parcel Serv.*, No. 11-cv-6983 (KPF) 2014 WL 1407706, at *13 (S.D.N.Y. Apr. 11, 2014).

Even applying broad principles of the NYCHRL, the record still shows a genuine dispute of material fact as to whether plaintiff actually submitted the medical forms required of him pursuant to his employer's policy. Viewing the evidence in the light most favorable to the non-moving party, defendant maintains that it transmitted to USMS every form plaintiff submitted to Inter-Con, indicating that certain forms were indeed never submitted. As the legitimacy of Inter-Con's proffered reason depends on the resolution of this factual dispute, partial summary judgment in favor of plaintiff is inappropriate on his NYCHRL claim.

## CONCLUSION

Because the evidence presents genuine issues of material fact, the record precludes the entry of summary judgment in this matter. Accordingly, the court denies both defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. This opinion resolves docket entry numbers 35 and 38.

SO ORDERED.

Dated: New York, New York
September 29, 2017

_____
Thomas P. Griesa
U.S. District Judge